UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IBEW System Council No. 7<br><br>　　Plaintiff | Civil Action No: 1:11-cv-07219-WHP<br>ECF CASE |
| VS. | |
| Metro-North Railroad Company<br><br>　　Defendant | October 17, 2011 |

## **COMPLAINT**

### NATURE OF ACTION

1. The plaintiff brings this action against the defendant to enforce on behalf of its members a Special Adjustment Board Award against the defendant Metro-North Railroad.

### JURISDICTION

2. This Court has subject matter jurisdiction in this case pursuant to the Railway Labor Act, 45 U.S.C. § 153 Second. Venue properly lies in this Court pursuant to 45 U.S.C. § 153 First (p).

### PARTIES

3. The plaintiff International Brotherhood of Electrical Workers (IBEW) System Council No. 7 is the Railway Labor Act designated collective bargaining agreement representative for electrical workers on Metro-North Railroad, and is headquartered in

Philadelphia, Pennsylvania.  The IBEW members on whose behalf the plaintiff is bringing this enforcement action are or were employed as radio maintainers/installers by the defendant Metro-North Railroad during the relevant time period.  Those members are:  R. Benicasa, C. Cormier, N. Donatone, V. Holland, and E. Kikel.

    4.   The defendant, Metro-North Railroad, is a railroad corporation duly established by law, and having a usual place of business in New York, New York.  During all times herein mentioned, the defendant was a common carrier engaged in the business of interstate commerce, and as such, operated a railroad in such business between New York, New York and New Haven, Connecticut.

**FACTS**

    5.   The Railway Labor Act (RLA) provides a comprehensive scheme for the resolution of disputes between railroad employers and their employees. 45 U.S.C. 153.  The RLA establishes an arbitration procedure to resolve disputes relating to the enforcement of collective bargaining contract rights.  This involves the joint creation of and participation in boards of arbitration by rail management and rail labor unions, including arbitration boards known as Special Boards of Adjustment (SBA).  In the instant case, a SBA is the applicable arbitration board.  Management and labor each have one designated representative on a particular SBA, which is then completed by a neutral member who is an independent outside arbitrator mutually selected by both parties and paid for by the National Mediation Board.  Once a SBA issues a written arbitration Award deciding a case submitted to it, that arbitration Award is final and binding on the parties and the RLA expressly empowers federal district courts to take whatever action is necessary to enforce that arbitration Award. 45 U.S.C. 153(p).

6. On behalf of its plaintiff members, the IBEW listed Case No. 573 for binding arbitration before SBA No. 934. That case concerned Metro-North's unilaterally distributing overtime work for installing communication equipment at 69 substations, in violation of the IBEW's Collective Bargaining Agreement (CBA). The Statement of Claim stated the relief requested and to be ordered by the SBA. Exhibit 1 at p.1.

7. The parties fully briefed and argued the case, and on October 29, 2010 SBA No. 934 issued a detailed 4-page binding arbitration Award No. 542. The SBA ruled in favor of the IBEW: "Claim sustained. The Carrier is directed to comply with this Award within 30 days of its date." Exhibit 1 at p.4.

8. The Claim sustained by the SBA reads as follows: "That accordingly, the MTA Metro-North compensate Claimants, four (4) hours pay each for every day that this work was performed at the overtime rate of pay." Exhibit 1 at p.1. In order to comply with the Award, Metro North must pay each of the five Claimants four hours of overtime wages for each of the 69 substations involved.

9. Despite repeated demands, Metro North failed to comply with the SBA Award. On September 23, 2011, the IBEW gave Metro North final warning that if it did not comply in full, a district court enforcement action would be filed.

10. On October 5, 2011, Metro North issued a letter confirming that 69 substation sites were involved but that it was only paying each Claimant "two hours at the straight time rate of pay for each GPS site installation." Exhibit 2. This does not comply with the Award, which requires Metro North to pay each of the five Claimants four hours of overtime wages for each of the 69 substations involved.

## CAUSE OF ACTION

11. Metro-North's failure to comply with SBA No. 934's final and binding arbitration Award No. 542 is a violation of the Railway Labor Act, 45 U.S.C. 153.

12. The RLA empowers and directs federal district courts to enforce SBA arbitration awards such as SBA No. 934's Award No. 542.

13. Each of the plaintiff's Claimant members are entitled to the payment of four hours of overtime earnings for each of the 69 substation sites on which work was performed.

WHEREFORE, the plaintiff requests that the Court issue a writ of mandamus or other appropriate order enforcing Award No. 542 of Special Board of Adjustment No. 934 by directing Metro-North Railroad:

(a) to pay each of the plaintiff's Claimant members four hours of overtime earnings for each of the 69 substation sites;

(b) to pay all the costs and attorney's fees involved in bringing this enforcement action; and

(c) to comply with any other relief the Court deems just and equitable.

FOR THE PLAINTIFFS
By his attorneys,

BY _/s/ Charles C. Goetsch_
Charles C. Goetsch [CG9082]
CAHILL, GOETSCH & PERRY, P.C.
43 Trumbull Street
New Haven, Connecticut  06510
(203) 777-1000

EXHIBIT 1

## SPECIAL BOARD OF ADJUSTMENT NO. 934

Case No. 573
Award No. 542

| | |
|---|---|
| **PARTIES** | International Brotherhood of Electrical Workers |
| **TO** | -and- |
| **DISPUTE** | MTA Metro-North Railroad |

### STATEMENT OF CLAIM:

The Organization hereby submits a claim in accordance with Rule 4-P-1 of the Controlling Agreement. This claim is on behalf of Radio Maintainers R. Benicasa, C. Cormier, N. Donatone, V. Holland and E. Kikel hereinafter known as the Claimants as is as follows:

1) That on or about September 25, 2008 the Organization became aware that starting on or about August 26, 2008 the MTA Metro-North Railroad violated the Controlling Agreement when the Company unilaterally distributed overtime work of the Substation Electricians headquartered at Substation A-31 and who performed the work of installing communication equipment including GPS Transceivers, Satellite Antennas, Antenna Cables and related equipment at various substations instead of assigning the Claimants causing Claimants to be unjustly deprived an additional work opportunity that would have accrued to them at the overtime rate of pay.
2) That accordingly, the MTA Metro-North compensate Claimants, four (4) hours pay each for every day that this work was performed at the overtime rate of pay, which they would have earned had the aforesaid Agreement had not been violated.
3) That accordingly, Claimants be compensated at their respective overtime rates for an equal proportionate share of the total number of man hours expended by others in performing any work described in Part 1 hereof, which they would have earned had the Agreement not been violated.
4) That as provided for under Rule 4-P-1(e) this is a continuous claim therefore when other than Claimants were assigned to perform this work before the date of this claim which work was started on or about August 26, 2008 and are assigned to perform this work which occurs any dates after the date of this claim, Claimants are to be compensated as requested in Parts 2 and 3 above.

Special Board of Adjustment No. 934
Case No. 573
Award No. 542

**FINDINGS:**

The issue involved in this dispute is the Carrier's assignment of the installation of Global Positioning System (GPS) components to Substation Electrical Workers as part of the Power Department SCADA Lock Out/Tag Out project at various substations along the Carrier's lines. The work as described in the claim, and not refuted during the handling of this case on the property, consisted of "installing communication equipment including GPS Transceivers, Satellite Antennas, Antenna Cables and related equipment."

The Organization contends that work in connection with GPS systems accrues to IBEW Communication Workers not Substation Electricians, citing the Communications Worker Classification of Work Rule and past practice in support of its position. The Organization cites Award No. 499 of this Board as upholding their position that the installation of GPS systems is work reserved to Communication Workers.

The Carrier's position is that the GPS-related work performed by the Substation Electricians was an incidental part of the entire project alleging that such work was a minor part of the overall assignment. In its submission before the Board, the Carrier relied on the incidental work rule in the Agreement to support its position that the work was properly assigned and further posited that the Organization failed to follow the procedures set forth in such rule for resolving disputes involving incidental work. In addition, the Carrier has contended that there is an established past practice that all electrical work in substations is performed only by Substation Electricians.

Initially, the Board will address the Carrier's position relative to the application of the provisions of the Incidental Work Rule to the present assignment of work. While it is true that during the on-the-property handling of this claim, the Carrier took the position that the GPS work was incidental to the main work assignment; there is nothing in the record, however, specifically referencing the Incidental Work Rule. Certainly, the Carrier never took the position until its submission before the Board, that the Shop Committee did not follow the procedures in the rule for resolving disputes regarding its application. Under well-established arbitral procedures in the handling of railroad disputes, the Board may not properly consider arguments that were not made during the handling of the case on the property. If the Carrier believed that the Organization improperly bypassed the dispute procedures in the Incidental Work Rule, it was incumbent to clearly state such objection during the claim handling process. Accordingly, the Board will dismiss out of hand the Carrier's argument relative to the purported failure of the Organization to follow the dispute resolution procedures in the Incidental Work Rule. During the Board hearing, the Carrier stated that the word "incidental" is a term of art in this industry and that the use of such word was a reference to the Incidental Work Rule. Again, the Board notes that the Carrier never specifically referenced the Incidental Work Rule nor did the Carrier demonstrate that the disputed work fulfilled the definition of "incidental work" as contained in the rule. Even assuming, arguendo, that the use of the word incidental in denying the claim was a

2

Special Board of Adjustment No. 934
Case No. 573
Award No. 542

reference to the Incidental Work Rule, the Board does not find that the disputed work, as identified in the claim, fulfills the contractual definition of that word as set forth in the Agreement.

Relative to the competing arguments concerning past practice, the Board finds that neither party supplied sufficient factual documentation to support their respective positions. While the Carrier stated that Substation Electricians performed identical work on the New Haven Line, it supplied no documentation to support this contention when the Organization stated in its July 7, 2009 letter that it disagreed that "an identical project was undertaken on the New Haven Line" and that "no such past practice existed" of Substation Electricians performing communication related work within the confines of substations. Once the Organization refuted the Carrier's position of a past practice, it was incumbent upon the Carrier to counter such refutation in some meaningful manner. Similarly, the Organization's signed statement that the work described in the claim "has been exclusively Radio Maintainers work for many years" was bereft of any factual underpinnings. Based on its analysis of the record, the Board will not rely on past practice in determining the merit of the present dispute.

In light of the above, the remaining issue that must be determined is whether the Organization has sustained its burden to show that the disputed work is work that is reserved to Communication Electricians under the language of the Classification of Work Rule. The Organization is basing its claim on language in the rule which states that Communication Electricians work jurisdiction covers all assembly, building, connecting of systems such as, but not limited to, "public radio broadcast transmitters...digital computer equipment consisting of, but not limited to, central processing units, storage units interface and control equipment, input-output equipment and CRT equipment and all related apparatus...receivers, recorders and apparatus, carrier transmitters, receivers, repeaters and related equipment used for communication or control...any other system or method used for communication purposes."

Inasmuch as there is no specific reference to GPS, the Board must determine whether the work of installing communication equipment including GPS Transceivers, Satellite Antennas, Antenna Cables and related equipment falls within the ambit of "any other system or method used for communication purposes" as those terms are generally recognized. It is not necessary for the Board in this case to make a totally independent decision on this issue in that in Award No. 499 of this Board, the arbitrator found the installation of GPS equipment is covered under the Communication Electrician Classification of Work Rule. Although that award dealt with the contracting out of GPS units in Carrier vehicles, the Board finds that the underlying conclusion that such work is Communication Electrician work is equally valid and applicable to the present case. Accordingly, the Board finds that the disputed work as identified in the claim should have been assigned to Communication Electricians instead of Electricians assigned to the Power Department.

3

Special Board of Adjustment No. 934
Case No. 573
Award No. 542

In its submission and argument before the Board, the Carrier took the position that the remedy sought by the Organization is improper in that the "IBEW did not incur a lost wages opportunity because other IBEW members performed the work." This position was raised for the first time before the Board and for the reasons previously stated will not be considered. While the Carrier did take the position that the work was properly assigned, the Carrier never took issue with the propriety of the claimed remedy during the handling of the case on the property, in the event the work was improperly assigned.

**AWARD:** Claim sustained. The Carrier is directed to comply with this Award within 30 days of its date.

_____
Joseph M. Fagnani, Neutral Member

_____          _____
Andrew Paul, Carrier Member                Arthur J. Davidson, Employee Member

Dated: October 29, 2010

4

# EXHIBIT 2

October 5, 2011

Mr. Arthur J. Davidson
General Chairman, IBEW
239 McClellan Street
Pennsport Mall
Philadelphia, PA  19148

Re:   SBA No. 934, Award No. 542

Dear Mr. Davidson:

The purpose of this letter is to inform you that the following Claimants were compensated in regards to the above-referenced arbitration award. Payment was processed on September 30, 2011 for the employee's receipt in their October 6, 2011 paychecks.

| Claimant | ID | Amount |
|---|---|---|
| R. Benicasa | (109572) | $1,019.52 |
| N. Donatere | (114119) | $962.87 |
| V. Holland | (109096) | $1,079.72 |
| E. Kekel | (112791) | $994.08 |
| C. Cormier | (116049) | $46.74 |

These payments are in accordance to the break-down that you provided us in your May 6, 2011 correspondence. Nonetheless, your May 6th correspondence only provided us with a list of Claimants for the sixty-nine (69) GPS sites that had been installed. Because the GPS installation required two-employee teams, your Organization is still owed payment for sixty-nine GPS site installations. Please forward us a list of Claimants and the amount of GPS site installations for which they are entitled to payment. Upon receipt of your list of Claimants, payment will be processed.

MTA Metro-North Railroad is an agency of the Metropolitan Transportation Authority, State of New York
Jay H. Walder, Chairman and Chief Executive Officer

H:LaborRelations/Pasquarelli/Cali/IBEW-LDavidson Payment Award 542-10-5-11

Each Claimant is entitled to two hours at the straight time rate of pay for each GPS site installation. This methodology was outlined in a correspondence mailed to you on June 30, 2011.

Very truly yours,

Andrew J. Paul
Director, Labor Relations